IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SEAN HOLBROOK,

      Plaintiff,

v.                                                    CV 07-1100 WPL/RHS

SAMUEL JAMES GAVITO
AND GAVITO TRUCKING INC.,

      Defendants.

**ORDER**

At approximately 5:00 p.m. on August 30, 2007, Sean Holbrook was driving his motorcycle northbound on San Mateo Boulevard N.E. in Albuquerque. At the same time, Samuel James Gavito pulled out of the parking lot of the Peerless Tire Company in a semi-tractor and trailer owned by Gavito Trucking. As Gavito attempted to cross the northbound lanes and head south, Holbrook's motorcycle collided with the truck. The rear wheels of the truck ran over Holbrook's legs and he sustained two broken tibias, a broken foot, and a broken finger. (Doc. 1 (Compl. ¶¶ 8-12, 15-17).) Holbrook brought a suit for negligence against Gavito and Gavito Trucking, seeking compensatory and punitive damages. (*Id.* ¶¶ 20-26.) Defendants now move for partial summary judgment on the issue of punitive damages. (Doc. 52.) This order will grant the motion.

**Summary Judgment Standards**

Summary judgment is appropriate if "there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c). The court examines the record and draws all factual inferences in the light most favorable to the nonmoving party. *Farmers Alliance Mut. Ins. Co. v. Naylor*, 452 F. Supp. 2d 1167, 1170 (D.N.M. 2006). The moving party bears the initial burden of showing that there is an absence

of evidence to support the nonmoving party's case. *Id.* It then falls to the nonmovant to identify specific facts that show the existence of a genuine issue of material fact. *Id.*

**Facts**

For the limited purposes of the summary judgment motion, Defendants assert that the following facts are undisputed. (*See* Doc. 52 App. at 1-2.) Upon completing a delivery to the Peerless Tire Company, Gavito pulled into the northbound lanes of San Mateo at approximately 5:00 p.m. He "checked for oncoming traffic on south bound and north bound San Mateo before pulling ahead to make his turn." (*Id.* at 2.) He slowed down while making the turn to allow another vehicle heading south to pass through. Gavito did not notice Holbrook until he "heard tires screeching and saw [Holbrook] sliding on his motorcycle toward" the truck. (*Id.*) The Albuquerque Police Department investigated the accident and did not issue any citations. (*Id.*)[1]

In his response, Holbrook agrees that the facts stated above are undisputed for purposes of this motion, but relies on additional facts submitted in an affidavit by Jeff G. Vick. (Doc. 55 at 2.) According to the affidavit, Vick is a retired New Mexico State Police sergeant and the owner of a consulting firm that specializes in "traffic reconstruction." (*Id.* Ex. A ¶¶ 1-2.) Having investigated this accident, Vick opines that "the trier of fact should . . . give adequate consideration to the following factors" in determining whether Gavito was wanton or reckless: 1) New Mexico "has placed a heightened sense of responsibility" on drivers of semi-trucks by requiring them to maintain a commercial driver's license; 2) the speed limit is forty miles per hour at the accident site; 3) there are eight traffic lanes at the accident site; 4) the accident occurred at rush hour; 5) the semi-tractor with trailer was approximately 65 feet long and was partially loaded; 6) Gavito "attempted to exit

---

[1] These facts are derived from excerpts of the depositions of Gavito and an officer who investigated the accident. (*See* Doc. 52 App. Ex. A & B.)

the Peerless Tires drive in a northerly direction forcing him to proceed against the easterly traffic flow entering and exiting the La Privada Apartments and the neighboring businesses utilizing same"; 7) Gavito "would have had to drive his tractor-trailer northbound a certain distance in order to negotiate the trailer from the narrow drive in a safe manner"; 8) Gavito "attempted to negotiate an illegal maneuver (u-turn), by driving north out of the Peerless Tires parking lot, proceeding briefly north on San Mateo, and then maneuvering west across the remaining traffic lanes in an effort to proceed southbound on San Mateo"; and 9) this attempted maneuver required him to see, and possibly yield to, two directions of traffic in eight lanes, along with the two traffic lanes that enter and exit the apartments.  (*Id.* ¶ 5.)

In their reply, Defendants do not argue that Vick's affidavit is improper summary judgment evidence.  *See* FED. R. CIV. P. 56(e)(1) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").  I therefore accept the information contained in the affidavit for purposes of ruling on this motion.

## Discussion

The parties agree that the substantive law of New Mexico governs this case.  (Doc. 22 at 2.) Under New Mexico law, punitive damages may be awarded for conduct that is malicious, willful, reckless, wanton, fraudulent, or in bad faith.  *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 995 (10th Cir. 1999).  If the plaintiff presents sufficient evidence of one of these mental states, the question of punitive damages belongs to the jury.  *Id.*

Holbrook contends that Gavito's actions were reckless or wanton.  "Reckless conduct is the intentional doing of an act with utter indifference to the consequences."  N.M. UJI 13-1827.

3

"Wanton conduct is the doing of an act with utter indifference to or conscious disregard for a person's" safety. *Id.*

The New Mexico Supreme Court has indicated that the duty of care increases in tandem with the risk of danger. "Thus, as the risk of danger increases, conduct that amounts to a breach of duty is more likely to demonstrate a culpable mental state." *Clay v. Ferrellgas, Inc.*, 881 P.2d 11, 14 (N.M. 1994).

Defendants state that, based on Vick's affidavit, Holbrook "appears to be making the argument that any time a truck driver turns left on a wide street at 5:00 PM, then the driver must be acting in a reckless or wanton manner, regardless of the traffic conditions existing at that particular moment." (Doc. 57 at 3.) I agree that a more particularized inquiry into the specific conditions existing at the time of the accident is required.

Gavito gave the following testimony during his deposition:

I pulled back around the front of the building, headed towards that exit corner; got to the corner, was watching traffic. Traffic on San Mateo's pretty busy that time of day. Sometimes you have to wait quite a while for traffic to clear and everything to make room so you can get out. The lights both to the north . . . and to the south, at McCloud, the lights had changed red. So that whole stretch of road had cleared to where there was no traffic.

   I started to pull out, got across the road. Coming at me across from the oil change—whatever, the Quick Lube—I met a car coming out of there. She was almost all the way out into the lane to go south in front of me, so I slowed almost to a stop to let her finish her turn and go south. That was when I heard the tires screeching, sliding. Looked out my window to the left, and that's when I saw Mr. Sean Holbrook sliding on his motorcycle.

(Doc. 52 App. Ex. A.)

Thus, although it is undisputed that Gavito attempted to cross an eight-lane road with multiple entrances and exits at rush hour, it is also undisputed that "there was no traffic" when Gavito pulled out of the parking lot. (*Id.*) Another undisputed fact is that Gavito "checked for

oncoming traffic on south bound and north bound San Mateo before pulling ahead to make his turn." (Doc. 52 App. at 2.) Vick's general observations about the accident site and time of day and his characterization of Gavito's maneuver do not suffice to parlay Gavito's ordinary negligence, if any, into recklessness or wantonness. As another court noted, "Though the vast majority of motor vehicular collisions result from intentional turns or acts of one kind or another, only a small percentage of such acts exceed the level of ordinary negligence." *Howard v. Parker*, 382 S.E.2d 808, 810 (N.C. Ct. App. 1989) (internal punctuation omitted). There is no evidence to suggest that Gavito was aware of a heightened risk of danger associated with his conduct. *Cf. Enriquez v. Cochran*, 967 P.2d 1136, 1169 (N.M. Ct. App. 1998) ("We do not believe a jury question [regarding punitive damages] could be created without some evidence of BSA's knowledge prior to Plaintiff's injury concerning the dangers of felling large dead trees."). Moreover, the New Mexico Court of Appeals has held that the operation of an eighteen-wheeled truck is not an inherently dangerous activity. *See Valdez v. Yates Petroleum Corp.*, 155 P.3d 786, 789 (N.M. Ct. App. 2007).[2]

In conclusion, viewed in the light most favorable to Holbrook, there is no evidence from which a jury could infer that Gavito acted with utter indifference to the consequences or with utter indifference to or conscious disregard for others' safety. Therefore, Defendants' motion for summary judgment on the issue of punitive damages is granted.

IT IS SO ORDERED.

---

[2] This holding was made in the context of deciding whether an employer could be held liable for the negligence of its independent contractor.

5

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.

6