# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SEAN HOLBROOK,

    Plaintiff,

v.     CV 07-1100 WPL/RHS

SAMUEL JAMES GAVITO
AND GAVITO TRUCKING INC.,

    Defendants.

## ORDER

Defendants have filed a motion to exclude the testimony of Plaintiff's accident reconstruction expert at trial. (Doc. 62.) The motion is granted to the extent described below.

### *Background*

This case concerns an accident that occurred as Sean Holbrook was driving his motorcycle on San Mateo Boulevard N.E. and Samuel James Gavito was pulling out of the parking lot of the Peerless Tire Company in a semi-tractor and trailer owned by Gavito Trucking. The record indicates that the Peerless Tire parking lot has a driveway at the southeastern corner of San Mateo Boulevard and the entrance road to La Privada Apartments. Gavito used this driveway to exit the parking lot. Before Gavito exited, Holbrook was proceeding north in the innermost of the three northbound lanes of San Mateo from a green light to the south of the Peerless Tire Company. He claims that he saw Gavito's truck exit into the outermost of the three northbound lanes and assumed that Gavito would stay in that lane. (Doc. 63 at 3.) Unfortunately, that assumption was wrong. Gavito intended to cross all of the northbound lanes, proceed through a break in the median, and then head south.

Defendants seek to exclude the testimony of Jeff G. Vick, a retired New Mexico State Police sergeant who specializes in accident reconstruction. Holbrook has submitted a report and an affidavit by Vick. For purposes of ruling on Defendants' motion, I assume that Vick's trial testimony would consist of the information provided in the report and affidavit.

Before preparing his report, Vick surveyed, photographed, and videotaped the accident site and reviewed the investigating officer's accident report and diagram. (Doc. 62 Ex. C.) Vick's report describes the dimensions, layout, and features of the relevant part of San Mateo Boulevard and the adjacent entrance road to La Privada Apartments. It points out several flaws in the accident report and diagram. It also notes that portions of the accident report conflict with Holbrook's version of the accident. Most importantly, the accident report states that at the time of the accident Gavito had stopped to wait for a vehicle heading south in the right curb lane and that Holbrook's injuries resulted from the impact of his body against the road, whereas Holbrook told Vick that his body went over the top of his motorcycle, hit the tractor, fell to the ground, and was run over by the tractor's drive tires. (*Id.*)

Vick's report states that Gavito violated N.M. STAT. ANN. § 66-7-322(b) by initially going against the direction of traffic at the entrance to La Privada Apartments and violated N.M. STAT. ANN. § 66-7-331 by blocking the path of Holbrook, who had the right of way.[1] Vick identified several problems with Gavito's decision to use the driveway at the southeastern corner of San Mateo. He also noted that a utility pole, traffic sign, and other objects may have prevented Gavito from seeing Holbrook. Vick opined that the only "reasonable" way to exit from the southeastern

---

[1] The first statute requires a turn at an intersection to be made from the right half of the roadway, and the second statute requires a driver who is about to cross a highway from a private road or driveway to yield the right of way to all vehicles approaching on the highway.

2

driveway would have been to continue northward, rather than attempting to cross the other lanes of traffic to head south. He concluded that Gavito failed to yield the right of way and attempted to negotiate an illegal u-turn. (*Id.*)

Vick's affidavit details the difficulty he faced in attempting a scientific reconstruction of the accident. It states:

> Upon review of available information regarding the crash in question, I determined that there was not enough documented physical evidence to scientifically analyze speeds, timing, exact locations and paths traveled of vehicles. Also dimensions of the Gavito truck and positions throughout the development of the crash scenario were not available. Therefore, my opinion was tendered based on my understanding of the traffic laws, and the interpretation of the general accident situation.

(Doc. 63 Ex. 8 at 3.) The affidavit also states:

> With the lack of physical evidence for scientific analysis in most areas of this crash, and trying to stay away from a speculative approach using scientific techniques, I applied my experience, background, knowledge and training to evaluate this crash.

(*Id.* at 4.) The affidavit lists the state statutes, federal regulations, and commercial vehicle safety manuals that Vick consulted while formulating his opinions about this case. The affidavit asserts that "[i]n spite of the lack of specific speed, path, final rest, impact and timing data, there is enough information [from statutes, regulations, and manuals] to evaluate this crash and formulate an opinion as to contributing factors which led to the cause of this crash." (*Id.* at 7.) Vick also stated that he relied on his inspection of the accident site and Holbrook's account of the accident in developing his opinion. The affidavit concludes:

> Based on my findings there are certain factors that appear to be causal to this crash. Information indicates failure to yield is a contributory factor. Negotiating an improper turn also contributed to the cause of this traffic crash. With insufficient time the decisions to initiate and attempt to move a large slow accelerating vehicle onto and across a 6 lane roadway and failing to identify an approaching motorcycle and rider prior to the initiation of the movement affected 3 motorists. Mr. Gavito, Mr. Holbrook and the southbound vehicle [sic]. During the process of this maneuver, northbound traffic was blocked, it became necessary for Mr. Gavito to

3

> stop his Vehicle which become [sic] a barrier blocking north and southbound lanes of traffic. Better and safer options were available which would not have had the same level of risk as the maneuver which was unsuccessfully attempted.

(*Id.*)

Defendants do not dispute that Vick is qualified as an accident reconstructionist. Instead, they argue that his opinion lacks a sufficient factual foundation, is based on speculation, and would not assist the jury. According to Defendants, Vick's opinion that Holbrook had the right of way is mere speculation because he could not determine timing, speeds, and distances. They also point out that Vick essentially provides an opinion regarding the reasonableness of Gavito's turn. They argue that such an opinion will not assist the jury because jurors are as qualified as Vick to determine whether Gavito's actions were reasonable.

Holbrook counters that scientific data is not necessary to determine the cause of the accident. He asserts, "To conclude that the Gavito vehicle was responsible, at least in part, for the accident does not require anything other than evaluation of the geographical area, the path described by Mr. Gavito to [the investigating officer], and ultimately, an evaluation of those choices in light of the duties imposed on all drivers, and especially those of Commercial Motor Vehicles." (Doc. 63 at 7.)

### *Vick's Conclusions Regarding Fault and Reasonableness*

An expert may testify regarding scientific, technical, or other specialized knowledge if, among other things, "the testimony is based upon sufficient facts or data" and "will assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. This rule imposes a "gatekeeping" responsibility on me to determine whether proffered expert testimony is reliable. *See Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1243 (10th Cir. 2000); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The rule allows broad latitude for deciding how to determine reliability. The

4

point "is not to measure every expert by an inflexible set of criteria but to undertake whatever inquiry is necessary to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Smith*, 214 F.3d at 1243 (quoting *Kumho Tire*, 526 U.S. at 152).

Although the gatekeeping function is generally performed at a "*Daubert* hearing," such a hearing is not required. *Burlington N. & Santa Fe Ry. v. Grant*, 505 F.3d 1013, 1031 (10th Cir. 2007). Here, neither side has requested a hearing, the issue has been fully briefed, and Vick's credentials, affidavit, and report are before me. I therefore conclude that a hearing is not necessary.

The focus under Rule 702 should usually be on the expert's methodology rather than the conclusions generated by the methodology. *Goebel v. Denver & Rio Grande W. R.R.*, 346 F.3d 987, 992 (10th Cir. 2003). But the "expert's conclusions are not immune from scrutiny: 'A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Id.* (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "It is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." *Goebel v. Denver & Rio Grande W. R.R.*, 215 F.3d 1083, 1088 (10th Cir. 2000).

An expert's opinion may be based upon data "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." FED. R. EVID. 703. This "language would not warrant admitting in evidence the opinion of an 'accidentologist' as to the point of impact in an automobile collision based on statements of bystanders." FED. R. EVID. 703 advisory committee's note. Citing this commentary, one court upheld the exclusion of a law enforcement officer's opinion as to the location of an accident because the opinion "was based on

5

no physical evidence (none existed) and was derived primarily from the story of a biased eyewitness." *Dallas & Mavis Forwarding Co. v. Stegall*, 659 F.2d 721, 722 (6th Cir. 1981).

In a case with facts similar to this one, a motorcyclist was involved in an accident with a milk truck. *Faries v. Atlas Truck Body Mfg. Co.*, 797 F.2d 619, 620 (8th Cir. 1986). The trial court allowed the investigating police officer to testify as an expert witness that the motorcyclist was driving too fast at the time of the accident. *Id.* at 623. The officer had arrived at the accident site shortly after the accident occurred, observed the scene and the relative positions of the parties and vehicles, interviewed the milk truck driver and his passenger (who was also the driver's son), noted and measured the length of fresh gouge marks or skid marks and estimated their position on the pavement, and prepared an accident report with a diagram of the accident. *Id.* at 621. The Eighth Circuit held that the officer should not have been allowed to give his opinion because his investigation was not complete. He did not measure the relative positions of the motorcyclist, the motorcycle, and the milk truck, or the positions of the gouge or skid marks on the highway. Moreover, although he interviewed the milk truck driver and passenger, he did not interview the motorcyclist. *Id.* at 622. Thus, the officer did not base his opinion on facts or data of a type reasonably relied upon by accident reconstruction experts. *See id.* at 623-24.

Other cases have reached similar results. *See J.B. Hunt Transp., Inc. v. Gen. Motors Corp*, 243 F.3d 441, 444 (8th Cir. 2001) (upholding exclusion of expert testimony because the expert admitted that he did not have sufficient evidence to reconstruct the accident scientifically, rendering his opinion speculative); *Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 91-92 (2d Cir. 2000) (upholding exclusion of expert testimony as speculative because the expert had never seen the boat or motor involved in the accident even in a photograph, had never spoken with the children involved in the accident, was unaware of the dimensions of the boat and the placement of the seats in relation

6

to the motor, did not know precisely what happened and where the children were positioned immediately preceding the accident, and had never attempted to reconstruct the accident or test his theory); *Rosado v. Deters*, 5 F.3d 119, 124 (5th Cir. 1993) (upholding exclusion of expert testimony partly because the expert "admitted that he could not independently establish the necessary physical and mathematical bases for his opinion"). *But see Kelsay v. Consol. Rail Corp.*, 749 F.2d 437, 448-49 (7th Cir. 1984) (upholding trial court's decision to allow a police officer, who had investigated the accident scene as well as approximately twenty other similar accidents, to testify that in his opinion the cause of the accident was driver inattention, because he was at the accident site for a long time and made extensive observations, even though he did not take any exact measurements).

In this case, Vick has admitted that he did not have sufficient information to perform a scientific reconstruction of the accident. As in *Stegall*, his conclusion that Gavito did not have the right of way is based in part on what Holbrook, an interested party, told him regarding the circumstances of the accident. Vick indicated at his deposition that Gavito did not attain the right of way when he exited the parking lot because he made an improper turn. (Doc. 62 Ex. B at 63-67.) Holbrook was Vick's only source of information as to how the turn was made. (*Id.* at 86-87.)

Vick's opinion about the right of way is also based on his understanding of certain statutes. As noted above, Vick concluded that Gavito violated N.M. STAT. ANN. § 66-7-331 by blocking the path of Holbrook, who had the right of way. The statute states, "The driver of a vehicle about to enter [or] cross a highway from a private road or driveway shall yield the right-of-way to all vehicles approaching on said highway." During Vick's deposition, defense counsel questioned how Vick could conclude that Gavito violated this statute without knowing Holbrook's speed or distance when Gavito pulled out of the parking lot. (*See* Doc. 62 Ex. B at 61-68.)

A case discussing section 66-7-331 shows that the attorney's questioning was on point. *See Int'l Serv. Ins. Co. v. Ortiz*, 405 P.2d 408 (N.M. 1965). *Ortiz* involved an accident between an automobile and a pickup truck where a highway and private road met. The driver of the pickup truck approached the intersection when the other driver was 300 feet to the west. He stopped and looked in both directions. Seeing no oncoming traffic, he began to cross the highway and the collision occurred. The appellants contended that the pickup truck driver was negligent as a matter of law in failing to keep a proper lookout for oncoming traffic and in failing to yield the right of way. They relied in part on the statute quoted above. The court disagreed. The evidence that the driver stopped, looked, and found the highway free of traffic for a distance of 300 feet before proceeding established reasonable compliance with the statute. *Id.* at 409-10.

Thus, Holbrook's distance from the parking lot driveway at the time Gavito exited is important to determining who had the right of way.[2] This information, however, is missing.[3]

---

[2] This conclusion is supported by another statute that Holbrook cites in his response. (*See* Doc. 63 at 8.) It provides that a driver who intends to turn left "shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but said driver, having so yielded . . . may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right-of-way . . . ." N.M. STAT. ANN. § 66-7-329.

[3] There is another problem, not specifically mentioned by Defendants, with allowing Vick to testify that Gavito violated statutory duties. "Generally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts." *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003) (quoting *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998)). An expert may refer to the law in expressing an opinion and may be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms. *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir.1988). But an expert cannot define the legal parameters within which the jury must exercise its fact-finding function; thus, "when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed." *Id.* at 810; *see also* FED. R. EVID. 704(a) & advisory committee's note (indicating that expert testimony that "embraces an ultimate issue to be decided by the trier of fact" is permissible as long as it does not "merely tell the jury what result to reach").

I also agree with Defendants that Vick was in no better position than the jury to evaluate whether Gavito's maneuver was reasonable.

In a case from the Second Circuit, the plaintiff alleged that he fell from an icy, debris-strewn platform at a train station, landed on the track bed, and was struck by a train while wandering along the tracks. *Andrews v. Metro N. Commuter R.R.*, 882 F.2d 705, 706-07 (2d Cir. 1989). At trial, the plaintiff testified that the train station was filthy, that the platform had trash and ice on it, and that the lighting was very dim. The trial court allowed the plaintiff's expert to testify that the platform was not a "safe place" and that it was "reasonable" for the plaintiff to have walked along the tracks. *Id.* at 708. The Second Circuit held that "[t]he jury needed no special training or expertise to decide whether the platform . . . was a 'safe place.'" *Id.*

In a case from the Seventh Circuit, a defendant claimed that the cruise control system of his truck contributed to an accident by distracting the defendant's attention from the road until it was too late for him to stop the truck and avoid colliding with the car in front of him. *Roback v. V.I.P. Transp. Inc.*, 90 F.3d 1207, 1209 (7th Cir. 1996). The trial court excluded the testimony of an expert regarding "the visual perception of automobile drivers." *Id.* at 1215. He would have testified that people perceive relative velocities poorly and that distractions compound this problem. After reviewing the defendant's deposition, he estimated that the defendant was distracted for at least three seconds. He concluded that, assuming the truck was traveling at 60 miles per hour, a 3-second distraction would have cost the defendant about 267 feet in which to stop the truck and thus, the defendant almost certainly could have stopped the truck short of a collision if he had not been distracted by the cruise control. *Id.* The Seventh Circuit held that the trial court did not abuse its discretion in excluding the expert's testimony. The expert's opinions as to how long the defendant's eyes were diverted from the road and how much reaction time this cost him bordered on speculation.

*Id.* Although his testimony might arguably have been helpful to explain how drivers perceive relative velocities, "any juror who drives would readily have understood without the benefit of [the expert's] testimony that a driver needs to watch a vehicle in front of her in order to assess how quickly she is approaching it, and that if the driver is distracted she may not realize until too late that she needs to slow down." *Id.*; *see also Taylor v. Ill. Cent. R.R.*, 8 F.3d 584, 585-86 (7th Cir. 1993) ("This issue . . . boils down to whether a pile of large rocks is harder to stand on than a pile of smaller rocks. Notwithstanding [the expert's] lengthy experience . . . , any lay juror could understand this issue without the assistance of expert testimony.").

Likewise, in this case, the jury will be able to view the visual depictions of the accident scene and consider the testimony of witnesses regarding how Gavito exited the parking lot, potential blind spots, and other ways in which Gavito could have exited. The jury does not need expert testimony to determine whether Gavito's maneuver was reasonable. Indeed, Holbrook asserts that the maneuver "offend[ed] common sense." (Doc. 63 at 9.)[4]

### *Other Possible Testimony by Vick*

During his deposition, Vick assigned certain numbers as the coefficients of friction for the motorcycle's brakes. He stated that he based these numbers on his experience and on a booklet he had read. (Doc. 62 Ex. B at 13-14.) Although Defendants do not challenge Vick's qualifications as an accident reconstructionist, their motion to exclude asserts in passing that because there is nothing in Vick's background to show that he is an expert regarding coefficients of friction, he

---

[4] Testimony regarding reasonableness might also violate the prohibition against legal conclusions discussed in footnote 3. *See, e.g., Christiansen*, 332 F.3d at 1283 (upholding the exclusion of an expert's testimony that defendants acted "recklessly" because the testimony constituted a legal conclusion); *Andrews*, 882 F.2d at 708 (holding that expert should not have been allowed to testify that it was "reasonable" for the plaintiff to have walked along the tracks).

should not be allowed to testify about this issue based only on information he gleaned from a booklet. Neither his affidavit nor his report indicates that Vick's conclusions regarding fault in the accident were based on coefficients of friction. Holbrook's response does not address coefficients of friction. However, Vick's affidavit, which was submitted with the response, provides additional support for his expertise regarding coefficients of friction. (Doc. 63 Ex. 8.) Defendants do not address the issue in their reply.

Thus, it is not clear whether or for what purpose Holbrook intends to have Vick testify regarding coefficients of friction. It is also not clear whether Defendants continue to dispute his expertise in this area. Accordingly, this order expresses no opinion as to the admissibility of evidence regarding coefficients of friction.

Holbrook's response to the motion to exclude points out that Vick used satellite imagery and surveying equipment to measure distances between locations in the area of the accident. Nothing in this order precludes Holbrook from attempting to introduce at trial Vick's testimony regarding his measurements or the images or diagrams associated with those measurements.

### *Conclusion*

Vick's conclusions regarding the causes of the accident and the legality and reasonableness of Gavito's maneuver are not based upon sufficient facts or data and will not be helpful to the jury. *See* FED. R. EVID. 702. Accordingly, Vick will not be allowed to testify as to these conclusions at trial.

IT IS SO ORDERED.

                                                                                        _____
                                                                                        WILLIAM P. LYNCH
                                                                                        UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.